IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BERTUCCI'S HOLDINGS, INC., *et al.*[1] | Case No. 18-10894 (MFW) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: August 28, 2018 at 10:30 a.m. (ET)<br>Objection Deadline: August 2, 2018 at 4:00 p.m. (ET) |

**DEBTORS' MOTION FOR AN ORDER APPROVING PROCEDURES PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A) AND 363 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 6004, FOR THE SALE OF CERTAIN MISCELLANEOUS ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND TO APPROVE THE SALE OF CERTAIN MISCELLANEOUS ASSETS**

The above-captioned debtors and debtors-in-possession (the "Debtors"), by and through their undersigned counsel, hereby submit this *Debtors' Motion for an Order Approving Procedures Pursuant to Bankruptcy Code Sections 105(a) and 363 and Federal Rules of Bankruptcy Procedure 6004, for the Sale of Certain Miscellaneous Assets Free and Clear of Liens, Claims and Encumbrances and to Approve the Sale of Certain Miscellaneous Assets* (the "Motion"). In support of the Motion, the Debtors respectfully represent as follows:

**JURISDICTION**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Bertucci's Holdings, Inc. (0243), Bertucci's Holdings, LLC (8034), Bertucci's Corporation (1266), Bertucci's, Inc. (7209), Two Ovens Restaurant Corp. (4922), Bertucci's Restaurant Corp. (4750), Bertucci's of Anne Arundel County, Inc. (4761), Bertucci's of Columbia, Inc. (4758), Bertucci's of Baltimore County, Inc. (9001), Bertucci's of Bel Air, Inc. (4759), and Bertucci's of White Marsh, Inc. (4760). The Debtors' corporate headquarters and the mailing address is 155 Otis Street, Northborough, Massachusetts 01532.

{1197.002-W0051727.3}

1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.[2]

2. The statutory bases for relief sought herein are sections 365 and 105(a) of title 11 of Chapter 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended or modified, the "Bankruptcy Code") together with rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3. On April 15, 2018 (the "Petition Date"), the Debtors commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their business and manage their properties as debtors-in-possession, pursuant to Bankruptcy Code sections 1107(a) and 1108.

5. Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases and information regarding the Debtors' business and capital structure is set forth in detail in the *Declaration of Brian Connell in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") [D.I. 3].

6. On April 27, 2018, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") [D.I. 113].

7. On June 5, 2016, the Court entered the *Order (I) Approving Asset Purchase Agreement and Authorizing the Sale of Certain Assets of the Debtors Outside of the Ordinary*

---

[2] Pursuant to Local Rule 9013-1(f), the Debtors hereby confirm their consent to entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

*Course of Business, (II) Authorizing the Sale of Assets Free and Clears of All Liens, (III) Authorizing the Assumption and Assignment or Rejection of Certain Executory Contracts and (IV) Granting Related Relief* [D.I. 295] (the "Sale Order") authorizing the Debtors to sell substantially all of their assets to Bertucci's Holding, LLC (the "Sale") pursuant to the terms of the Court-approved asset purchase agreement. On June 21, 2018 (the "Closing Date"), the Sale closed.

8. The Sale did not transfer all of the Debtors assets. Certain assets were deemed excluded (each, a "Miscellaneous Asset" and, together, the "Miscellaneous Assets"). The Debtors have determined that they currently are in possession of certain assets that were not sold pursuant to the Agreement,[3] constituting Miscellaneous Assets, including but not limited to miscellaneous equipment, liquor licenses and various types of other personal property that will no longer be used or necessary in connection with the Debtors' business. The Debtors believe they may sell certain of the Miscellaneous Assets, such as liquor licenses, in the ordinary course of business; however, to avoid doubt and to maximize value to the Debtors' estates during the wind-down process, the Debtors seek Court approval to sell the Miscellaneous Assets (each, a "Miscellaneous Asset Sale" and, collectively, the "Miscellaneous Asset Sales").[4]

9. The Debtors' pre-petition senior secured lender, CIT Bank, N.A. ("CIT") has consented to the relief requested herein.

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Order.

[4] Prepetition, the Debtors received offers to purchase two (2) liquor licenses, which are Miscellaneous Assets. A potential buyer has offered to purchase the liquor license related to operation of the Faneuil Hall, MA restaurant location for $104,000 (the "Faneuil Hall Sale"). Additionally, a potential buyer has offered to purchase the liquor license related to operation of the Kenmore Square, MA restaurant location for $104,000 (the "Kenmore Square Sale").

## RELIEF REQUESTED

10. The Debtors seek entry of an order authorizing the implementation of comprehensive procedures (the "Sales Procedures") pursuant to Bankruptcy Code sections 105(a) and 363 to make, from time to time, sales or transfers of certain of the Miscellaneous Assets. The Debtors have determined, or may determine from time to time, in their business judgment, that they are in possession of certain assets, including miscellaneous equipment, liquor licenses and various types of other personal property which constitute Miscellaneous Assets.

11. The Debtors believe that employing the Sales Procedures proposed in the Motion would be the most efficient and economical means by which to dispose of the Miscellaneous Assets. Additionally, the Debtors believe the Faneuil Hall Sale and the Kenmore Square Sale are both ordinary course sales and an appropriate exercise of the Debtors' business judgment.

## PROPOSED PROCEDURES

12. The Sales Procedures provide interested parties with notice of and the opportunity to object to Miscellaneous Asset Sales. Accordingly, the Debtors request that the following Sales Procedures be implemented with regard to Miscellaneous Asset Sales.

**A.    Net Value Less Than or Equal to $500,000.00.**

13. For any Miscellaneous Asset Sale involving the sale of property which has, in the judgment of the Debtors, a fair value of less than or equal to $500,000.00, the Debtors will be authorized, without following the notice procedures otherwise required under the Sales Procedures, without further notice to any party (other than the United States Trustee, CIT and the Committee) and without further Court approval, to consummate the sale of such property for consideration determined by the Debtors, in consultation with the Committee and CIT, to be reasonable, and such sale will be deemed final and fully authorized by the Court.

14. Miscellaneous Asset Sales made in accordance with the provisions of paragraph 16 above may be by private sale or by public auction, as determined by the Debtors to be most efficient under the facts and circumstances applicable to each sale.

**B.    Net Value Greater Than $500,000**

15. The following Sales Procedures will apply to the sale of property which has, in the judgment of the Debtors, a fair net value of greater than $500,000:

    a.    The Debtors will file a notice (the "Sale Notice") of the proposed sale (the "Proposed Sale") with the Court and will serve the Sale Notice by hand delivery or overnight mail on the following parties: (a) the United States Trustee; (b) the Committee; (c) CIT; and (d) all known parties holding or asserting liens on or other interests in the assets that are the subject of the Proposed Sale and their respective counsel, if known (collectively the "Interested Parties").

    b.    The Sale Notice will include the following information with respect to the Proposed Sale:

        i.    a description of the Miscellaneous Assets that are the subject of the Proposed Sale and their locations;

        ii.    the identity of the non-debtor party or parties to the Proposed Sale and any relationships of the non-debtor party or parties with the Debtors;

        iii.    the identity of any parties known to the Debtors to hold liens on or other interests in the assets and a statement indicating that all such liens or interests are capable of monetary satisfaction;

        iv.    the principal economic terms and conditions of the Proposed Sale; and

        v.    instructions consistent with the terms described below regarding the procedures to assert objections to the Proposed Sale.

    c.    The deadline for filing an objection to the Proposed Sale (an "Objection") shall be 4:00 p.m. (Eastern Time) on the fifth day after the date of the Sale Notice (the

"Sale Objection Deadline"). If no Objections are properly asserted prior to the Sale Objection Deadline, the Debtors will be authorized without further notice and without a hearing or further Court approval to consummate the Proposed Sale substantially in accordance with the Proposed Sale as described in the Sale Notice. In addition, the Debtors may consummate the Proposed Sale prior to the Sale Objection Deadline if each Interested Party consents in writing to the Proposed Sale. Upon either (a) the expiration of the Sale Objection Deadline without the receipt of any Objections, or (b) the consent of all Interested Parties, the Proposed Sale will be deemed final and fully authorized by the Court.

    d.  If any significant economic terms of a Proposed Sale are amended after transmittal of the Sale Notice, but prior to the Sale Objection Deadline, the Debtors shall send a revised Sale Notice to all Interested Parties describing the Proposed Sale, as amended. If a revised Sale Notice is required, the Sale Objection Deadline will be extended for an additional five (5) days.

    e.  An Objection will be considered timely only if it is filed with the Court and actually received by the following parties (collectively, the "Objection Notice Parties") on or before the Sale Objection Deadline: (1) bankruptcy counsel to the Debtors, Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801 (Attn: Adam G. Landis, Esq. and Kerri K. Mumford, Esq.); (2) counsel to CIT, Holland & Knight, 200 Crescent Court, Suite 1600, Dallas, Texas 75201 (Attn: Brent McIlwain, Esq.) and Delaware counsel to CIT, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Robert S. Brady, Esq.); (3) the Office of the United States Trustee, 844 N. King Street,

Room 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Timothy J. Fox, Esq.); and (4) counsel to the Committee, Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178 (Attn: Eric R. Wilson, Esq., Jason R. Adams, Esq., Lauren S. Schlussel, Esq.) and Delaware counsel to the Committee, Bayard, P.A., 600 N. King Street, Suite 400, Wilmington, Delaware 19801 (Attn: Justin R. Alberto, Esq.).

    f.    Unless otherwise ordered by the Court, a reply to an Objection may be filed with the Court and served on or before 12:00 noon (Eastern Time) at least two (2) business days before the date of the applicable hearing.

    g.    If no Objections are timely filed (and received by the Objection Notice Parties) by the Sale Objection Deadline, the Debtors may immediately and without further order sell the Miscellaneous Asset listed in the Sale Notice and take any actions that are reasonable and necessary to close the transaction and obtain the sale proceeds. If an Objection is timely filed and received and cannot be settled by the parties, the Miscellaneous Asset that is the subject of the Objection will not be sold except upon order of the Court, *provided*, *however*, that any Miscellaneous Asset set forth in the Sale Notice that is not the subject of the Objection may be immediately sold in accordance with the foregoing sentence.

16.    Miscellaneous Asset Sales made in accordance with the provisions of paragraph 15 above may be by private sale or by public auction, as determined by the Debtors to be most efficient under the facts and circumstances applicable to each sale.

**C.**    **Effects of Miscellaneous Asset Sale**

17.    Any purchaser of any Miscellaneous Asset will take title to the asset free and clear of liens, claims, encumbrances, and other interests, pursuant to Bankruptcy Code section

363(f). All such liens, claims, encumbrances, and other interests will attach to the proceeds of the sale (to the extent the underlying security agreement provides for the continuation of such liens, claims, encumbrances, and other interests) with the same validity and priority as with respect to the assets.

## BASIS FOR RELIEF

18. The Debtors seek approval of the ordinary course sales. Courts generally have interpreted "ordinary course of business" in section 363(b) to "embrace the reasonable expectations of interested parties of the nature of transactions that the debtor would likely enter in the course of its normal, daily business." *Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997). To that end, in determining whether a transaction is "ordinary," courts have applied two tests, both of which must be satisfied. *See In re Roth American, Inc.*, 975 F.2d 949, 953 (3d Cir. 1992); *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 797 (Bankr. D. Del. 2007). The horizontal test asks whether the transaction is of the sort commonly undertaken by companies in that industry. *Roth*, 975 F.2d at 953 (citation omitted). The vertical test, on the other hand, focuses on the "debtor's pre-petition business practices and conduct, although the court must also 'consider the changing circumstances inherent in the hypothetical creditor's expectations.'" *Id.* (internal citations omitted). Throughout its business, the Debtors have sold Miscellaneous Assets in the ordinary course when closing restaurants, as is done in the business generally. Nonetheless, the Debtors seek court approval.

**A.  Miscellaneous Asset Sales are an Appropriate Exercise of the Debtors' Business Judgment**

19. Bankruptcy Code section 363(b)(1) also supports the Sale Procedures. 11 U.S.C. § 363(b)(1); *see also* Fed. R. Bankr. P. 6004(f)(1) ("All sales not in the ordinary course of

business may be by private sale or by public auction."). Although Bankruptcy Code section 363 does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if the sale is based upon the sound business judgment of the debtor. *See In re Abbotts Dairies of Pa., Inc.,* 788 F.2d 143 (3d Cir. 1986); *see also, Meyers v. Martin (In re Martin),* 91 F.3d 389, 395 (3rd Cir. 1996); *In re Montgomery Ward Holding Corp.,* 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.,* 124 B.R. 169, 176 (D. Del. 1991); *In re Elpida Memory, Inc.,* 2012 Bankr. LEXIS 5367, *18 (Bankr. D. Del. Nov. 16, 2012) (explaining that the "section 363(b) standard is well-settled . . . [a] debtor may sell assets outside the ordinary course of business when it has demonstrated that the sale of such assets represented the sound exercise of business judgment").

20. The Court has the authority to grant the relief requested herein. The Debtors maintain Bankruptcy Code section 363(b)(1) provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." The debtor's decisions to use, sell, or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.,* 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him a good business reason to grant such application); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.),* 242 B.R. 147, 153 (D. Del. 1999) (explaining that "[i]n determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions");

*In re Del. & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991) (affirming decision permitting debtor to sell assets where sound business reasons supported the sale).

21. The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). In fact, courts presume that in making a business decision the directors of a corporation act in such a manner. *In re Dura Auto. Sys.*, 2007 Bankr. LEXIS 2764, *260 (Bankr. D. Del. Aug. 15, 2007) ("There is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company") (internal quotations and citation omitted). Courts generally will not entertain objections to the debtor's conduct where "'the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously) . . . .'" *Id.* at *259-60 (*quoting Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Masville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986)). Accordingly, "if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1)." *Id.* at *260.

22. The Debtors currently possess (and in the future may identify) certain Miscellaneous Assets that they may desire to sell or transfer during the wind-down of these Chapter 11 Cases because such Miscellaneous Assets are no longer necessary to the Debtors' estates after the Closing Date. To defray any operational, carrying, storage, or other expenses associated with the Miscellaneous Assets, it is in the best interests of the estates for the Debtors

to consummate sales or transfers of the Miscellaneous Assets in accordance with the Sales Procedures.

23. The Sales Procedures will expedite the flow of cash into the estates and eliminate the need to prepare and prosecute motions to obtain express court approval of every individual sale (which will maximize the economic benefits to the estates). In addition, the Sales Procedures will protect the Debtors against the declining value of the Miscellaneous Assets, eliminate certain administrative costs, reduce professional fees and expedite the sale of the Miscellaneous Assets, while protecting the best interests of Debtors' estates. Moreover, the Miscellaneous Asset Sales may generate additional cash flow to the Debtors' estates such that unsecured creditors, which currently will not receive any distribution, may recover from the Debtors' estates.

24. Although CIT has asserted a lien on some of the Miscellaneous Assets, CIT consents to the sale of Miscellaneous Assets pursuant to Bankruptcy Code section 363(f) in exchange for a corresponding security interest in the proceeds of such Miscellaneous Asset Sales. Bankruptcy Code section 363(f) permits a debtor to sell property free and clear of liens, claims and encumbrances if one of the following conditions is satisfied: (i) applicable non-bankruptcy law permits the sale of the property free and clear of such interest, (ii) the entity holding the lien, claim or encumbrance consents to the proposed sale, (iii) the interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property, (iv) the interest is in bona fide dispute, or (v) the entity could be compelled, in a legal or equitable proceeding, to accept a monetary satisfaction of its interest. 11 U.S.C. § 363(f); *see also Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J.V.*, 209 F.3d 252, 257 (3d Cir. 2000) (stating that Bankruptcy Code section 363(f) authorizes the sale of a debtor's assets

free and clear of any interest if any of the five prescribed conditions are met); *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) (explaining that Bankruptcy Code section 363(f) is written in the disjunctive and, as such, "if any one of the five conditions [of Bankruptcy Code section 363(f)] are met, the debtor has the authority to conduct the sale free and clear of all liens"); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

25.  The Debtors propose to conduct the Miscellaneous Asset Sales in a commercially reasonable manner, and expect that the value of the proceeds from such Miscellaneous Asset Sales will fairly reflect the value of the property sold. Additionally, to the extent CIT has a security interest in the Miscellaneous Asset, CIT consents to the relief requested in this Motion and shall have a corresponding security interest in the proceeds of such Miscellaneous Asset Sales that have a net value of less than or equal to $500,000 and which are consummated pursuant to this Motion. Furthermore, CIT will receive the Sale Notice and will have an opportunity to object to any sale in which it claims an interest on any Miscellaneous Assets which have a net value greater than $500,000. If CIT receives the Sale Notice and does not object within the prescribed time period, CIT will be deemed to have consented to the proposed sale and the property may then be sold free and clear of CIT's interest pursuant to section 363(f) with any such liens to be, at the Debtors' sole discretion, either (i) satisfied from the proceeds of the sale or (ii) transferred and attached to the net sale proceeds in the same order or priority that such liens had on the Miscellaneous Assets sold. As such, the Debtors submit that the requirements of Bankruptcy Code section 363(f) would be satisfied for any proposed sale or transfers free and clear of liens, claims, encumbrances and other interests by the Sales Procedures.

26. In approving the sales of Miscellaneous Assets free and clear of liens, the Debtors request that the Court find that those who purchase Miscellaneous Assets in accordance with the Sales Procedures are entitled to the protections afforded by Bankruptcy Code section 363(m). This relief is appropriate in light of the opportunity for review and objection provided herein.

B.  **Approval of Proposed Sales on Limited Notice**

27. As noted above, the "notice" required by Bankruptcy Code section 363(b)(1) is "such notice as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). The Debtors propose that the notice outlined above is sufficient given the small value of the Miscellaneous Assets.

28. Bankruptcy courts have recognized that, when determining whether notice is appropriate under the circumstances for purposes of Bankruptcy Code section 102(1)(A), they are "guided by fundamental notions of procedural due process." *In re Lomas Fin. Corp.*, 212 B.R. 46, 54 (Bankr. D. Del. 1997). Due process "requires that any notice is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (*quoting Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *In re Grand Union Co.*, 204 B.R. 864, 871 (Bankr. D. Del. 1997). In sum, if basic due process is afforded to interested parties and an appropriate cause for limited notice is established, a court may determine that limited notice of an asset sale is appropriate.

29. The Debtors seek the approval of the Sales Procedures to maximize the net value realized from sales of the Miscellaneous Assets. These procedures will accommodate the smooth and timely consummation of such Miscellaneous Asset Sales. Under the circumstances, the usual process of obtaining Court approval of each Proposed Sale subject to the Sales

Procedures would: (a) impose unnecessary administrative burdens on the Court and use valuable time at omnibus hearings; (b) create costs to the Debtors' estates that may undermine or eliminate the economic benefits of the underlying transactions; and (c) in some instances hinder the Debtors' ability to take advantage of the sale opportunities that are available only for a limited time. Therefore, the Debtors propose to streamline the process as described herein.

30. For the foregoing reasons, the Debtors submit that (a) sufficient cause exists to implement the modified notice provisions proposed herein, and (b) these modified notice procedures will make the sale process as efficient as possible, while preserving fully the rights of the Interested Parties.

31. The Debtors also believe that limiting service of the Sale Notices to the Interested Parties is justified under the circumstances. The Interested Parties represent the key parties in interest who should receive notice of any Proposed Sale. Under the circumstances, the Debtors believe that this manner of notice is appropriate and fully preserves the necessary due process rights.

C. **Approval of Transactions Without a Hearing**

32. As stated above, the sale of property outside of the ordinary course of business may occur only "after notice and a hearing." 11 U.S.C. § 363(b)(1). Such sales are authorized without an actual hearing, however, if no party in interest timely requests such a hearing. 11 U.S.C. § 102(1)(B)(i) (notwithstanding any statutory requirement for "notice and a hearing," the Bankruptcy Code "authorizes an act without an actual hearing if such notice is given properly and if such a hearing is not requested timely by a party in interest"). Moreover, as described above, due process is satisfied if parties in interest are given "an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

33. The Debtors believe that the Sales Procedures comport with the hearing requirements of the Bankruptcy Code and due process by providing an opportunity for Interested Parties to present Objections and request a hearing on each Proposed Sale. Under these circumstances, a Proposed Sale may be approved without a hearing if no Interested Party, after being presented with the opportunity to object and seek a determination of the Court, requests a hearing on such sale.

34. With respect to Miscellaneous Assets having a value less than or equal to $500,000.00, the Debtors believe that the opportunity to object to this Motion and the hearing on this Motion are sufficient to satisfy the hearing requirements of the Bankruptcy Code and due process under the circumstances. The primary parties representing the interests of unsecured creditors of the Debtors' estates (*i.e.*, the United States Trustee and the Committee) are being given the opportunity to object to this Motion and the Debtors are unaware of any party (except CIT) claiming a lien, security interest, or other encumbrance on any of the Miscellaneous Assets. To the extent that the Debtors may become aware of any such claim, and to the extent the value of any property being sold pursuant to the Sales Procedures is greater than $500,000.00, such party will be given notice and an opportunity to object. Following the notice procedures otherwise required under the Sales Procedures for Miscellaneous Assets instead might eliminate the economic value generated by such sales.

D.  **Approval of Similar Procedures in Other Cases**

35. In light of the demonstrable benefits of streamlined procedures to sell small assets and the legal justifications described above, procedures similar to the Sales Procedures have been approved in other chapter 11 cases in this District. *See, e.g., In re MAC Acquisition LLC*, No 17-12224 (Bankr. D. Del. Nov. 13, 2017) (authorizing sale of liquor licenses not to exceed

$1,100,000 in the aggregate pursuant to expedited notice procedures) (Walrath, J.); *In re Molycorp Minerals, LLC, et al.*, No. 15-11371 (Bankr. D. Del. Nov. 18, 2016) (Sontchi, J.) (authorizing sale of surplus assets with value less than or equal to $250,000); *In re Tri-Valley Corporation, et al.*, No. 12-12291 (Bankr. D. Del. Sept. 20, 2012) (Walrath, J.) (authorizing the sale of assets with value of $250,000 or less on limited notice); *In re SP Newsprint Holdings LLC, et al.*, No. 11-13649 (Bankr. D. Del. Mar. 5, 2012) (Sontchi, J.) (authorizing the sale or abandonment of assets with an estimated book value of less than $50,000 on limited advance notice and the sale to non-insiders or abandonment of assets under $30,000 with no advance notice); *In re Harry & David Holdings, Inc., et al.*, No. 11-10884 (Bankr. D. Del. April 27, 2011) (Walrath, J.) (authorizing the sale of assets for $250,000 or less in total consideration or the sale of assets with a book value of less than $500,000 with limited notice).

## REQUEST FOR WAIVER OF STAY

36. To implement the foregoing, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, of lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtors submit that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable.

37. Further, to implement the foregoing immediately, the Debtors also request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed applicable.

## NOTICE AND NO PRIOR REQUEST

38. No trustee or examiner has been appointed in these Chapter 11 Cases. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the U.S. Trustee; (b) the Committee; (c) CIT; and (h) all parties that have filed a request for notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no further or other notice is required.

39. No previous request for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an Order substantially in the form attached hereto (a) granting the relief requested herein and (b) granting such other and further relief as the Court deems just and proper.

Dated: July 19, 2018
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
Kimberly A. Brown (No. 5138)
Jennifer L. Cree (No. 5919)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
      mumford@lrclaw.com
      brown@lrclaw.com
      cree@lrclaw.com

*Counsel to the Debtors and Debtors-In-Possession*