## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BERTUCCI'S HOLDINGS, INC., *et al.*[1] | Case No. 18-10894 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: November 7, 2019 at 10:30 a.m. (ET)**<br>**Obj. Deadline: October 30, 2019 at 4:00 p.m. (ET)** |

### MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A), 305(A), 349, 554, AND 1112(B) AND BANKRUPTCY RULES 1017(A) AND 6007 (I) DISMISSING THE DEBTORS' CHAPTER 11 CASES AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby submit this *Motion of the Debtors for Entry of an Order Pursuant to Bankruptcy Code Sections 105(a), 305(a), 349, 554, and 1112(b) and Bankruptcy Rules 1017(a) and 6007 (I) Dismissing the Debtors' Chapter 11 Cases and (II) Granting Related Relief* (the "Motion"). In support of the Motion, the Debtors respectfully state as follows:

### PRELIMINARY STATEMENT[2]

The Debtors initiated these Chapter 11 Cases with the objective of maximizing value for their stakeholders by selling substantially all of their assets on a going concern basis. The court-approved Sale successfully preserved thousands of jobs, maintained a restaurant business upon which hundreds of vendors and landlords could continue to depend, and left behind certain Miscellaneous Assets for the Debtors to monetize.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Bertucci's Holdings, Inc. (0243), Bertucci's Holdings, LLC (8034), Bertucci's Corporation (1266), Bertucci's, Inc. (7209), Two Ovens Restaurant Corp. (4922), Bertucci's Restaurant Corp. (4750), Bertucci's of Anne Arundel County, Inc. (4761), Bertucci's of Columbia, Inc. (4758), Bertucci's of Baltimore County, Inc. (9001), Bertucci's of Bel Air, Inc. (4759), and Bertucci's of White Marsh, Inc. (4760). The Debtors' corporate headquarters and the mailing address is 155 Otis Street, Northborough, Massachusetts 01532.

[2] Capitalized terms used in this Preliminary Statement have the meaning ascribed to them in the body of this Motion.

Although the cash proceeds from the going concern sale ($3.05 million) and the sale of Miscellaneous Assets (approximately $877,000) were sufficient to repay the DIP Facility, they are insufficient to pay off the $37.9 million owed to the First Lien Lenders as of the Petition Date (let alone the additional $72.5 million owed as of the Petition Date to the Second Lien Lender). The Debtors' only remaining assets of any value are two (2) liquor licenses – the proceeds from which will be (and all other funds remaining in the Debtors' estates are) the Cash Collateral of the First Lien Lenders.

While the Debtors, the Committee and the First Lien Lenders explored various options to bring these Chapter 11 Cases to a conclusion, ultimately the Debtors determined that dismissal is the most expeditious and cost-effective mechanism to wind down the Debtors' affairs.   In reaching this conclusion, the Debtors determined that dismissal would not negatively impact creditors (as compared to a chapter 11 plan or conversion to chapter 7) because there are no remaining unencumbered assets of any value available for distribution and insufficient funds to support the administrative costs of pursuing anything but a prompt exit from bankruptcy. Accordingly, with the support of the Committee and the First Lien Lenders, the Debtors seek the dismissal of these Chapter 11 Cases and certain related relief to effectuate the dismissal and the orderly wind down of the Debtors' estates.

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C.

§ 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.[3] Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105(a), 305(a), 349, 363, 554 and 1112(b) of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended or modified, the "Bankruptcy Code") and rules 1017(a) and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

*General Background*

3.      On April 15, 2018 (the "Petition Date"), the Debtors commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases") by each filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with the Court.

4.      The Debtors continue to manage their properties as debtors-in-possession, pursuant to Bankruptcy Code sections 1107(a) and 1108.  As of the date of this Motion, no trustee or examiner has been appointed in the Chapter 11 Cases.

5.      On April 27, 2018, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors in the Chapter 11 Cases (the "Committee") [D.I. 113].

6.      On May 3, 2018, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members* [D.I. 155] (the "Interim Compensation Order"), which sets forth the Court approved procedures governing applications for and payments of fees and expenses requested by

---

[3] Pursuant to Local Rule 9013-1(f), the Debtors hereby confirm their consent to entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

professionals retained by the Debtors and the Committee in the Chapter 11 Cases (the "Retained Professionals").

7.      A detailed description of the Debtors and their business, and the facts and circumstances surrounding the Chapter 11 Cases are set forth in greater detail in the *Declaration of Brian Connell in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration")[4] [D.I. 3].

***The Pre-Petition Senior Secured Liens***

8.      As detailed in the First Day Declaration, as of the Petition Date, the Debtors had outstanding secured debt obligations in the aggregate principal amount of $110.39 million, consisting of approximately:

  i.   $37.89 million (the "First Lien Debt") in secured first priority loans borrowed by Bertucci's Corporation under the First Lien Credit Facility from CIT, as Administrative Agent, L/C Issuer and Lender and Wells Fargo Bank, N.A. as Lender (together as the "First Lien Lenders"). The obligations are guaranteed by all of Bertucci's Corporation's affiliates except BH LCC (collectively, the "Guarantors") and are secured by first priority liens on generally all of the assets of Bertucci's Corporation and the Guarantors;

  ii.  $29.6 million (the "Second Lien Debt") in secured second priority loans borrowed by Bertucci's Corporation under the Second Lien Credit Agreement from DV II BHC LLC (the "Second Lien Lender"). The obligations are guaranteed by the Guarantors and secured by second priority liens on generally all of the assets of Bertucci's Corporation and the Guarantors; and

  iii. $42.9 million of secured first priority loans borrowed by BH LLC under the Holdco Term Loan from the Second Lien Lender. The obligations under the Holdco Term Loan are secured by first priority liens on all interests of BH LLC in the equity interests of all of its subsidiaries (*i.e.*, all of the other Debtors), subject to certain permitted liens, which include the First Lien Debt and the Second Lien Debt.

9.      The rights and remedies of the First Lien Lenders and the Second Lien Lender with respect to their collateral and distributions on account of the amounts owed to them are

---

[4] Terms utilized but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

governed by an Intercreditor and Subordination Agreement dated September 30, 2015 (the "Intercreditor Agreement"). The Intercreditor Agreement provides, among other things, for the subordination of the Second Lien Debt to the First Lien Debt.

**The 363 Sale, the DIP Facility and the Consensual Use of Cash Collateral**

10.    As explained in the First Day Declaration, the Debtors filed these Chapter 11 Cases to pursue a sale of substantially all of their assets to Right Lane Dough Acquisition, LLC (the "Stalking Horse Bidder") subject to higher or otherwise better bids.  To fund this going concern sale process, on the Petition Date, the Debtors sought entry of interim and final orders authorizing the Debtors to utilize the First Lien Lenders' cash collateral (the "Cash Collateral") on a consensual basis and to borrow up to $4 million on a senior secured basis (the "DIP Facility") from Right Lane Dough Funding LLC (the "DIP Lender"), an affiliate of the Stalking Horse Bidder, pursuant to an approved budget (the "DIP Budget").

11.    On May 7, 2018, the Court entered the *Final Order Authorizing Debtors to: (A) Incur Postpetition Debt; (B) Provide Adequate Protection; (C) Use Cash Collateral; and (D) Grant Certain Liens and Provide Security and Other Relief Related to Pre-petition Secured Lenders* [D.I. 181] (the "Final DIP Order").  Pursuant to the Final DIP Order, the Debtors admitted, stipulated, acknowledged, and agreed, among other things, to the validity, perfection, priority, and enforceability of security interests granted to the First Lien Lenders under the First Lien Credit Facility and any related guarantee, collateral or security agreements, subject to the Committee's rights under paragraph 30 of the Final DIP Order to commence a Challenge Action (as defined in the Final DIP Order).[5]  The DIP Facility was set to mature by no later than May 31, 2018.

---

[5] By successive agreements and orders of the Court, the Challenge Deadline has been extended to September 30, 2019 [D.I. 329, 347, 359, 394, 412, 465, 485, 535, 578, 596, and 617].

12.     On June 5, 2018, the Court entered the *Order (I) Approving Asset Purchase Agreement and Authorizing the Sale of Certain Assets of the Debtors Outside of the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clears of All Liens, (III) Authorizing the Assumption and Assignment or Rejection of Certain Executory Contracts and (IV) Granting Related Relief* [D.I. 295] (the "Sale Order") authorizing the Debtors to, among other things, sell substantially all of their assets (the "Sale") to Bertucci Holding, LLC (the "Successful Bidder") pursuant to the terms of the Court-approved asset purchase agreement (the "APA") for consideration consisting of: (i) cash in the amount of $3,050,000, (ii) payment of the Stalking Horse Bidder's court-approved termination fee, (iii) the issuance of a $13 million new second lien note for the benefit of the First Lien Lenders, and (iv) the assumption of various liabilities.

13.     In connection with the Sale, the Debtors and the Successful Bidder entered into a *Stipulation with Respect to Final Order Authorizing Debtors to: (A) Incur Postpetition Debt; (B) Provide Adequate Protection; (C) Use Cash Collateral; and (D) Grant Certain Liens and Provide Security and Other Relief to Prepetition Secured Lenders* (the "DIP Stipulation"), which was approved by the Court on June 5, 2018 [D.I. 296].  Pursuant to the DIP Stipulation: (i) the Successful Bidder was substituted as the DIP Lender for all purposes under the Final DIP Order and (ii) the Debtors were authorized to continue utilizing Cash Collateral subject to an approved extended budget through June 20, 2018.

14.     On June 21, 2018 (the "Closing Date"), the Sale closed.  Following the Closing of the Sale, all amounts required to be paid to the Successful Bidder in connection with the DIP Facility were satisfied in full.

15.     By successive stipulations and orders approving the same [D.I. 491, 535, 578, 596, 617] (collectively, the "Cash Collateral Stipulations"), the First Lien Lenders agreed to the Debtors' continued use of Cash Collateral in accordance with the further extended and approved DIP Budget through September 30, 2019 in order to wind down the Debtors' estates.

16.     The Cash Collateral Stipulations provide for a carve-out from the First Lien Lenders' Cash Collateral for the benefit of the Retained Professionals and the U.S. Trustee for (i) statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and (ii) to the extent provided for in the DIP Budget and allowed (whether by interim order, procedural order or otherwise) all unpaid fees and expenses incurred by the Retained Professionals set forth on the DIP Budget.

***The Remaining Assets***

17.     The Successful Bidder did not purchase all of the Debtors' assets. Certain assets including, among other things, miscellaneous restaurant equipment and certain liquor licenses were deemed excluded pursuant to the APA (together, the "Miscellaneous Assets").

18.     On August 29, 2018, the Court entered the *Order Approving Procedures Pursuant to Bankruptcy Code Sections 105(a) and 363 and Federal Rules of Bankruptcy Procedure 6004, for the Sale of Certain Miscellaneous Assets Free and Clear of Liens, Claims and Encumbrances and to Approve the Sale of Certain Miscellaneous Assets* [D.I. 440] authorizing the Debtors to sell the Miscellaneous Assets pursuant to certain procedures.

19.     In the fifteen (15) months since the Sale closed, the Debtors have actively marketed the Miscellaneous Assets and, as of the date hereof, have sold all but two (2) liquor licenses (the "Remaining Liquor Licenses") for a total of approximately $877,000. The Debtors have no prospective buyer for the Remaining Liquor Licenses.

***The Debtors' Books and Records***

20.    On the Petition Date, the Debtors maintained voluminous books and records, including without limitation, accounting documents, bank documents, corporate governance documents, documents related to contracts, leases and other contractual agreements of the Debtors, insurance documents, and human resources and other related employment documents and records (collectively, the "Books and Records"). Pursuant to the APA, most of the Books and Records were acquired by the Successful Bidder. However, the Debtors continue to maintain certain Books and Records not otherwise transferred to the Successful Bidder.

## RELIEF REQUESTED

21.    By this Motion, the Debtors request entry of the Initial Order immediately and the Final Dismissal Order upon filing of the Certification (as defined below), that collectively (a) dismisses the Debtors' Chapter 11 Cases and (b) grants related relief, including, without limitation, (i) authorizing, but not directing, the Debtors to abandon and destroy any and all of the Debtors' remaining Books and Records, (ii) approving procedures for filing and approving final fee applications and providing for payment of approved fees, (iii) authorizing, but not directing, the Debtors to be dissolved on the terms provided for in the Initial Order and Final Dismissal Order, and (iv) to the extent that there are any assets remaining with the estates upon the payment of the U.S Trustee fees and the final allowed fees and expenses of Retained Professionals, authorizing the Debtors to remit such assets to the First Lien Lenders on account of their prepetition secured claims and superpriority administrative claims granted by the Final DIP Order.

**BASIS FOR RELIEF**

**A.    The Court Must Dismiss these Chapter 11 Cases if the Elements for "Cause" Are Shown Under Section 1112(b)(4) of the Bankruptcy Code**

22.    Upon request of a party in interest, section 1112(b)(1) of the Bankruptcy Code provides that, absent unusual circumstances, a court "shall" dismiss a chapter 11 case (or convert such case to a case under chapter 7) "for cause." *See* 11 U.S.C. § 1112(b)(1). The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") changed the statutory language with respect to conversion and dismissal from permissive to mandatory.[6] *See* H.R. REP. NO. 109-31, pt. 1 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 94 (stating that the Act "mandate[s] that the court convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause, absent unusual circumstances."); *see also In re Gateway Access Solutions, Inc.*, 374 B.R. 556 (Bankr. M.D. Pa. 2007) (stating that the amendments to section 1112 limit the court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause); *accord In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal such that this Court has no choice, and no discretion in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4).") (emphasis added).

23.    For the reasons explained below, the Debtors submit that the Court must dismiss these Chapter 11 Cases because cause exists and dismissal is in the best interests of the Debtors, their estates and creditors.

---

[4] Prior to BAPCPA, a bankruptcy court had wide discretion to use its equitable powers to dispose of a debtor's case but was not mandated to dismiss a case if cause were shown. H.R. REP. NO. 95-595 (1977); S. REP. NO. 95-989 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787; *see also Small Business Admin. v. Preferred Door Co. (In re Preferred Door Co.)*, 990 F.2d 547, 549 (10th Cir. 1993) (a court has broad discretion to dismiss a bankruptcy case); *In re Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 728 (5th Cir. 1991) (determination of whether cause exists under § 1112(b) "rests in the sound discretion" of the bankruptcy court); *In re Koerner*, 800 F.2d 1358, 1367 & n.7 (5th Cir. 1986) (bankruptcy court is afforded "wide discretion" under section 1112(b)).

**B.**     **Cause Exists to Dismiss the Chapter 11 Cases Because the Debtors Ceased their Business Operations and Have Insufficient Assets to Confirm a Plan**

24.     Section 1112(b)(4) of the Bankruptcy Code provides a non-exhaustive list of sixteen (16) grounds for dismissal. 11 U.S.C. § 1112(b)(4)(A)-(P); *see also In re Gateway Access Solutions*, 374 B.R. at 561 ("Generally, such lists are viewed as illustrative rather than exhaustive, and the Court should 'consider other factors as they arise.'") (quoting *In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991)); *In re 3 Ram, Inc.*, 343 B.R. 113, 117 ("While the enumerated examples of 'cause' to convert or dismiss a chapter 11 case now listed in § 1112(b)(4) have changed under BAPCPA, the fact that they are illustrative, [and] not exhaustive has not."); *accord In re Frieouf*, 938 F.2d 1099, 1102 (10th Cir. 1991) (stating that section 1112(b)'s list is non-exhaustive).[7]

25.     One statutory basis to dismiss a case is where a party-in-interest shows that (i) there has been a "loss" or "diminution" of value of the estate and (ii) the debtor does not have "a reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 1112(b)(4)(A).   Under this two-fold inquiry, the debtors must first demonstrate that there has been a diminution of value of their estates.  *See, e.g., In re Citi-Toledo Partners*, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994) (finding that accumulation of real estate taxes impaired the value of the estate). Second, the Debtors must demonstrate that they have no "reasonable likelihood of rehabilitation*." See, e.g., Clarkson v. Cooke Sales And Service Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985) (dismissal warranted where "the absence of financial data and certain sources of income for the [debtors] indicate[d] the absence of a reasonable likelihood of rehabilitation"); *In re Tiana*

---

[7] In *In re TCR of Denver*, the court recognized the apparent typographical error in § 1112(b)(4) of the Bankruptcy Code. The sixteen illustrative examples of "cause" set forth in that section are linked by the word "and" after subsection (O).  Accordingly, strict construction of the statute would require that a debtor establish all of the items constituting "cause" before a case can be dismissed by the court.  The *TCR* court held that Congress could not have intended to require a "perfect storm" of all sixteen (16) circumstances listed before a case be converted or dismissed. *See In re TCR of Denver*, 338 B.R. at 498.

*Queen Motel, Inc.*, 749 F.2d 146 (2d Cir. 1984) (conversion under section 1112(b)(1), (2) and (3) warranted in light of Debtor's "failure . . . to demonstrate that their prospects for prompt rehabilitation were based upon anything more substantial than [their] boundless confidence" in the 15 months after the filing of a chapter 11 petition); *see also In re Wright Air Lines, Inc.*, 51 B.R. 96, 99 (Bankr. N.D. Ohio 1985) (stating that "[r]ehabilitation as used in 11 U.S.C. Section 1112(b)(1) means 'to put back in good condition; re-establish on a firm, sound basis'") (citation omitted).

26.      Here, the Debtors easily satisfy the two-fold inquiry.  First, the Debtors liquidated substantially all of their assets in connection with the Sale.  The Debtors no longer conduct any business, and have no remaining unencumbered assets that could be used to satisfy the claims of any class of creditors.  At the same time, administrative claims, such as fees and expenses of Retained Professionals and U.S. Trustee fees, continue to accrue each day the Chapter 11 Cases remain open.  Second, there is no business to reorganize.  Pursuant to the APA and the Sale Order, the Debtors transferred all of their operating assets to the Successful Bidder and have ceased operations.

27.      Moreover, while no longer an enumerated ground under amended section 1112 of the Bankruptcy Code, dismissal of a chapter 11 case is appropriate where the court finds that a feasible plan is not possible.  *In re 3 Ram*, 343 B.R. at 117-18.  If a chapter 11 debtor cannot achieve a reorganization within the statutory requirements of the Bankruptcy Code, then there is no point in expending estate assets on administrative expenses, or delaying creditors in the exercise of their nonbankruptcy law rights.  *Id.* at 118 (*citing*, inter alia, *In re Brown*, 951 F.2d at 572).

28.    Here, the Debtors do not have sufficient assets to confirm a plan of liquidation because the Debtors no longer have any operations and have no unencumbered assets to make all of the payments that would be required to be made under such a plan. Thus, there is no point in incurring additional administrative expenses when the Debtors are unable to consummate a liquidating plan.

29.    In sum, the Debtors have met their burden and these Chapter 11 Cases should be dismissed under section 1112(b)(4) of the Bankruptcy Code due to the substantial or continuing loss to, or diminution of, the Debtors' estates, the absence of a reasonable likelihood of rehabilitation and the fact that a liquidating plan is not feasible under the circumstances of these Chapter 11 Cases.

## C.    Dismissal is in the Best Interests of the Debtors' Creditors and Estates

30.    Once a court determines that cause exists to dismiss a debtor's chapter 11 case, the court must then evaluate whether dismissal is in the best interests of the debtor's creditors and the estate. *See, e.g.*, *Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 242 (4th Cir. 1994) ("Once 'cause' is established, a court is required to consider this second question of whether to dismiss or convert."). A variety of factors demonstrate that it is in the best interest of the Debtors' estates and their creditors to dismiss these Chapter 11 Cases.

31.    First, a dismissal of a chapter 11 bankruptcy case meets the "best interests of creditors" test where a debtor has nothing to reorganize, and the debtor's assets are fixed and liquidated. *See Camden Ordinance Mfg. Co. of Ark., Inc. v. U.S. Trustee (In re Camden Ordinance Mfg. Co. of Ark., Inc.)*, 245 B.R. 794, 799 (E.D. Pa. 2000) (reorganization to salvage business which ceased business was unfeasible); *Royal Trust Bank, N.A. v. Brogdon Inv. Co. (In*

*re Brogdon Inv. Co.)*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (court dismissed chapter 11 proceeding in part where there was "simply nothing to reorganize" and no reason to continue the reorganization).   As explained above, the Debtors have nothing left to reorganize because substantially all of their assets and operations were transferred to the Successful Bidder upon the closing of the Sale, and the Debtors have no unencumbered cash to make distributions to creditors pursuant to a chapter 11 plan or upon conversion of the Chapter 11 Cases to chapter 7.

32.     Second, courts have found that dismissal is in the "best interests of creditors" where an interested party, other than the debtor, supports the dismissal. *See Camden Ordinance*, 245 B.R. at 798; *In re Mazzocone*, 183 B.R. 402, 414 (Bankr. ED. Pa. 1995), *aff'd*, 200 B.R. 568 (E.D. Pa. 1996) (finding that factors weighed more heavily in favor of dismissal of chapter 11 case rather than conversion to chapter 7, where debtor and U.S. Trustee both favored dismissal). Here, both the Committee and the First Lien Lenders support the proposed dismissal.

33.     Third, the "best interests of creditors test" is met where a debtor demonstrates the ability to oversee its own liquidation. *See Camden Ordinance*, 245 B.R. at 798; *Mazzocone*, 183 B.R. at 412 ("Only when a Chapter 11 debtor has no intention or ability to . . . perform its own liquidation . . . should a debtor be permitted to remain in bankruptcy . . . ."). Here, the Debtors conducted the sale of substantially all of their assets, which maximized the value of those assets and liquidated them in an orderly fashion.   Following the closing of the Sale, the Debtors marketed and sold all but two (2) Remaining Liquor Licenses.   Given the extent of the First Lien Lenders' liens and the magnitude of their deficiency claim, any value received by the Debtors' estates on account of the Remaining Liquor Licenses would redound to the benefit of the First Lien Lenders.   As such, the Debtors are requesting authority to remit the Remaining Liquor Licenses to the First Lien Lenders in order to complete the wind down of the Debtors' estates

and obtain closure of these Chapter 11 Cases. Thus, the Debtors believe there is nothing further to pursue in these Chapter 11 Cases. Accordingly, the Debtors have demonstrated that they are capable of overseeing their own liquidation, to the extent this factor applies.

34.     Fourth, and finally, dismissal is appropriate where, as here, it will maximize the value of the Debtors' estates because the alternative – conversion to a chapter 7 liquidation and appointment of a trustee – is (i) unnecessary and would provide no benefit to creditors and (ii) would impose significant additional administrative costs upon the Debtors' estates without any meaningful source of funds to satisfy such costs. Under the circumstances, a chapter 7 trustee would have extremely limited funds, if any, to satisfy additional claims arising after conversion to cases under chapter 7 of the Bankruptcy Code. As explained above, substantially all of the Debtors' assets have been sold. Since the closing of the sale, the Chapter 11 Cases have been funded solely pursuant to the consensual use of Cash Collateral pursuant to the DIP Budget and the Carve-Out. The Debtors have no unencumbered cash and, even if able to sell the Remaining Liquor Licenses, any proceeds therefrom would be the Cash Collateral of the First Lien Lenders. By continuing in bankruptcy under chapter 7 (or chapter 11), the Debtors would just incur additional administrative expenses that they would be unable pay. Thus, the Debtors submit that a dismissal pursuant to section 1112 of the Bankruptcy Code is in the best interests of the Debtors' creditors and their estates.

35.     Thus, in balancing the equities of the Debtors' Chapter 11 Cases, the Debtors submit that it is in the best interests of their estates and creditors to dismiss the Chapter 11 Cases.

**D.     Dismissal of the Chapter 11 Cases Is Warranted Under Section 305(a) of the Bankruptcy Code.**

36.     Cause also exists to dismiss the Chapter 11 Cases pursuant to section 305(a) of the Bankruptcy Code, which provides that:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
>
> > (1)    the interests of creditors and the debtor would be better served by such dismissal or suspension....

11 U.S.C. § 305(a). Dismissal pursuant to section 305(a) is an extraordinary remedy, and is only appropriate where the court finds that both creditors and the debtor would be better served by dismissal. *In re AMC Investors, LLC*, 406 B.R. 478, 487-88 (Bankr. D. Del. 2009).

37.    Whether dismissal is appropriate under this provision is determined on a case-by-case basis and rests within the sound discretion of the bankruptcy court. *In re Sky Group Int'l, Inc.*, 108 B.R. 86, 91 (Bankr. W.D. Pa. 1989). Many factors are considered when determining the best interests of creditors and the debtor, including: (i) the economy and efficiency of administration, (ii) whether federal proceedings are necessary to reach a just and equitable solution, (iii) whether there is an alternative means of achieving an equitable distribution of assets, and (iv) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case. *AMC Investors*, 406 B.R. at 488.

38.    Here, cause exists for dismissal under section 305(a) of the Bankruptcy Code. The Debtors have sold substantially all of their assets and are unable to confirm a plan. The only assets left that potentially could be monetized – the Remaining Liquor Licenses – are speculative as to both timing and recovery. The beneficiaries of any value received from monetizing those assets (the First Lien Lenders) support the relief requested. With no other assets remaining to administer, conversion to chapter 7 would impose additional administrative costs with no corresponding benefit to the Debtors' creditors or their estates. As such, dismissal of the Chapter 11 Cases as set forth in this Motion, among other things, provides the most efficient, cost-

effective method of effectuating the wind down of the Debtors' estates, and ensures payment of all U.S. Trustee fees.

### E.    The Proposed Dismissal Complies with Applicable Law Governing Distributions

39.    The proposed dismissal complies with applicable law governing distributions of estate property.  Specifically, a final disposition "in connection with the dismissal of a Chapter 11 case cannot, without the consent of the affected parties, deviate from the basic priority rules" contained within the Bankruptcy Code.  *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 978 (2017).  In other words, a debtor may not use a dismissal as a means to distribute assets to a favored class of "low-priority general unsecured creditors" while "skipping" a disfavored class that would otherwise be entitled to priority of payment under a plan of liquidation. *See id.*  As it applies here, the Bankruptcy Code requires distributions first be made to holders of allowed secured claims (from the property or proceeds of such property on which they hold liens).

40.    Here, neither the Initial Order nor the Final Dismissal Order provides for the distribution of estate property to any party other than the First Lien Lenders.  Pursuant to the Final DIP Order and the Cash Collateral Stipulations, the First Lien Lenders have agreed to pay out of the Carve-Out of their Cash Collateral (*i.e.*, non-estate property) the allowed final fees and expenses of Retained Professionals and U.S. Trustee fees pursuant to the DIP Budget.  Any Cash Collateral remaining after these payments are made will be remitted to the First Lien Lenders. Additionally, the Debtors request authority to remit the Remaining Liquor Licenses to the First Lien Lenders on account of their liens on such property and any proceeds thereof pursuant to the Final DIP Order.  The Debtors submit that because there are no distributions proposed to be made of estate property to any party other than the First Lien Lenders, *Jevic* and concerns about "class skipping" are not relevant to these cases.

**F.    The Court Should Authorize the Debtors to Abandon and Destroy the Books and Records**

41.    Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, [a debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Additionally, section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *Id.* at § 105(a). Bankruptcy Rule 6007, meanwhile, provides that a debtor may abandon property of the estate by giving notice of the proposed abandonment to various parties, and allowing those parties to file an objection. As one bankruptcy court has noted, "if a trustee feels an asset is of inconsequential value and benefit to the estate or that it is 'burdensome to the estate,' [she] may abandon it." *Reich v. Burke (In re Reich)*, 54 B.R. 995, 1003-04 (Bankr. E.D. Mich. 1985).

42.    Here, the Debtors request that the Court authorize, but not direct, the Debtors to abandon and destroy the Books and Records pursuant to sections 105(a) and 554 of the Bankruptcy Code, and Bankruptcy Rule 6007, and to make all payments necessary to effectuate such destruction. As previously discussed, the Debtors have sold substantially all of their assets, no longer have an operating business and have largely wound down their affairs. A substantial portion of their Books and Records were transferred to the Successful Bidder as part of the Sale. To the extent any Books and Records are retained, they will be of no value to the Debtors after dismissal of the Chapter 11 Cases. For those reasons, the Debtors submit that they should not incur the potentially significant costs associated with maintaining and storing Books and Records that have no value to their estates, and they should be authorized to abandon and destroy, as applicable, such Books and Records.

### G.     The Court Should Authorize, but Not Require, Dissolution of the Debtors

43.     Because the Debtors have sold substantially all of their assets and ceased operations, the Debtors intend for their corporate entities to be dissolved as soon as reasonably practicable upon entry of the Final Dismissal Order.  Courts in this jurisdiction have previously authorized the dissolution of debtors by court order in connection with the dismissal of a chapter 11 case, in accordance with applicable state law.  *See, e.g.*, *In re Quantum Foods, LLC*, Case No. 14-10318 (KJC) (Bankr. D. Del. Apr. 6, 2018) [D.I. 1798]; *In re Sunco Liquidation, Inc.*, Case No. 17-10561 (KG) (Bankr. D. Del. Aug. 18, 2017) [D.I. 706]; *In re TAH Windown, Inc.*, Case No. 16-11599 (MFW) (Bankr. D. Del. Jan. 13, 2017) [D.I. 408]; *In re Hospitality Liquidation I, LLC*, Case No. 13-12740 (BLS) (Bankr. D. Del. Jan. 5, 2015) [D.I. 447].

44.     It is appropriate and necessary for the Court to authorize the dissolution of the Debtors. The Debtors have no further business to conduct and no other purpose in remaining active as corporate entities in their respective jurisdictions. The Debtors may incur additional taxes and statutory fees owing to their continued corporate existence absent their prompt dissolution.  Accordingly, it is in the best interests of the Debtors' estates for the Debtors to dissolve as soon as practicable following entry of the Final Dismissal Order.

### H.     All Prior Releases, Stipulations, Settlements, Rulings, Orders and Judgments Should Remain Binding and Should Continue To Have Full Force and Effect

45.     The dismissal of a chapter 11 case ordinarily vacates all orders previously entered by the bankruptcy court and restores all parties to the prepetition status quo. *See* 11 U.S.C. § 349(b).  A bankruptcy court may, however, "for cause, order[] otherwise . . . ." *Id.* Courts in this jurisdiction have regularly maintained the enforceability of orders, including those approving releases and settlements, after a dismissal, notwithstanding section 349 of the Bankruptcy Code. *See, e.g.*, *In re Sunco Liquidation, Inc.*, Case No. 17-10561 (KG) (Bankr. D. Del. Nov. 6, 2017)

[D.I. 865] (giving continued effect to orders entered throughout the pendency of the chapter 11 cases); *In re Old Towing Co.*, Case No. 17-10249 (LSS) (Bankr. D. Del. May 30, 2017) [D.I. 381] (giving continued effect to 363 sale order and any releases, injunctions and successor liability provisions provided for in such sale); *In re TAH Windown, Inc.*, Case No. 16-11599 (MFW) (Bankr. D. Del. Jan. 13, 2017) [D.I. 408] (giving orders, releases, and injunctions continuing effect).

46.     In these cases, the Debtors have sold substantially all of their assets to the Successful Bidder pursuant to a highly negotiated APA. Following the closing of the Sale, the Debtors pursued an orderly wind down of these Chapter 11 Cases, including assuming and assigning various executory contracts and unexpired leases and liquidating the Miscellaneous Assets.  Given all of these facts and circumstances, ample cause exists to allow all prior orders, releases, stipulations, settlements, rulings, and judgments entered by the Court in connection with the Chapter 11 Cases to be given continued effect, notwithstanding the requested dismissal, unless otherwise provided by a subsequent stipulation with the same party or parties.

**I.      The Court Should Establish Procedures for the Filing of Final Fee Applications by Retained Professionals**

47.     The Debtors request that the Court schedule a final omnibus fee hearing (the "Final Fee Hearing"). The Debtors further request that the Court require all Retained Professionals in these Chapter 11 Cases to file final requests for allowance and payment of all fees and expenses incurred during the Chapter 11 Cases (the "Final Fee Applications") not later than twenty (21) days prior to the Final Fee Hearing and that any objections to the Final Fee Applications be filed and served in accordance with the Interim Compensation Order by 4:00 p.m. (prevailing Eastern Time) on the date that is seven (7) days prior to the Final Fee Hearing.

**J.      The Certification Process and the Request for Entry of Final Dismissal Order is Reasonable Under the Circumstances**

48.      As soon as reasonably practicable following the payment of allowed final fees and expenses of Retained Professionals and U.S. Trustee fees, the Debtors request that the Court dismiss the Chapter 11 Cases upon the filing of a certification of counsel (the "Certification") requesting entry of a dismissal order substantially in the form attached as **Exhibit 1** (the "Final Dismissal Order") to the Initial Order.  Among other things, the Certification will verify that (i) all quarterly fees of the U.S. Trustee have been paid in full and (ii) the fees and expenses of Retained Professionals in these Chapter 11 Cases have been approved on a final basis and paid. The Final Dismissal Order will dismiss the Chapter 11 Cases immediately upon entry.

49.      The Debtors intend to serve the Certification on the U.S. Trustee, the Committee, the First Lien Lenders, and all entities that have requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"), but will not send the Certification to all of the Debtors' creditors, equity holders and parties-in-interest, as such parties will receive reasonable notice of the proposed dismissal through notice of the hearing on the present Motion.

## NOTICE AND NO PRIOR REQUEST

50.      The Debtors have provided notice of this Motion to the following or in lieu thereof, their counsel, if known:  (i) the U.S. Trustee; (ii) the First Lien Lenders; (iii) the Second Lien Lender; (iv) the Committee; (v) any party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b); and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors will serve notice of this Motion only, and will not serve a copy of the Motion itself, on the parties listed in clause (v) of the prior sentence.  In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no other or further notice is necessary.

51.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter the Initial Order and Final Dismissal Order, granting the relief requested herein and such other and further relief as this Court deems just and proper.

Dated: October 16, 2019
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_____
Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
Kimberly A. Brown (No. 5138)
Jennifer L. Cree (No. 5919)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
      mumford@lrclaw.com
      brown@lrclaw.com
      cree@lrclaw.com

_Counsel to the Debtors_
_and Debtors-In-Possession_